William G. Cross (Wyoming Bar No. 8-6562)
Jennifer Salisbury (Wyoming Bar No. 7-5218)
Markus Williams LLC
1775 Sherman Street, Suite 1950
Denver, CO 80203
Telephone: (303) 830-0800
Facsimile: (303) 830-0809
wcross@markuswilliams.com
jsalisbury@markuswilliams.com

*Counsel for Alexander Schurawel, CPA*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| SIGNAL HILL SERVICE, INC., ) | |
| ) | Case No. 24-20439 |
| Debtor. ) | |
| ) | |

**MOTION FOR CLARIFICATION REGARDING COMPLIANCE WITH
SUPOENA AND OBJECTIONS TO DOCUMENT REQUESTS**

Alexander Schurawel, CPA ("Schurawel"), by and through his undersigned counsel, hereby moves this Court for clarification regarding compliance with the Subpoena for Rule 2004 Examination issued by the California State Lands Commission (the "Commission") and objects to the scope of the Commission's requests for production of documents and requests the Court modify the Subpoena under Fed. R. Civ. P. 45(d)(3)(A) and/or 11 U.S.C. § 105(a) to prevent an undue burden on Mr. Schurawel. In support of this motion, Mr. Schurawel states as follows:

**INTRODUCTION**

1. By this motion, Mr. Schurawel seeks clarification from the Court on an open issue raised by the chapter 7 trustee's second report of no distribution and the Commission's and the Debtor's responses thereto. Specifically, whether the Commission's examination of Mr. Schurawel under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to discover possible assets of the bankruptcy estate should continue where the chapter 7 trustee certified to the Court that there are no assets or property to be administered for the benefit of creditors and that the estate has been fully administered.

2. If the Court answers that question in the affirmative, Mr. Schurawel objects to the scope of the Commission's document requests because the overly broad requests seek production of documents irrelevant to an inquiry into the Debtor's assets and impose an undue and unnecessary burden on Mr. Schurawel.

## STATEMENT OF CONFERRAL

3. Pursuant to Local Rule 7026-1(C), prior to filing this motion the undersigned conferred with counsel for the Commission to resolve the matters in dispute. Counsel for the Commission opposes the relief requested herein.

## BACKGROUND

4. Mr. Schurawel is a Certified Public Accountant and tax return preparer in Irvine, California. Mr. Schurawel is the only employee in his tax practice. For approximately 30 years, in this limited capacity Mr. Schurawel has prepared consolidated tax returns for the Debtor and non-debtor entities. Mr. Schurawel does not prepare tax returns for any employees, agents, officers, directors, representatives, consultants, accountants, or attorneys of the Debtor or the non-debtor entities appearing in the consolidated tax returns.

5. On November 1, 2024 (the "Petition Date"), Signal Hill Service, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 7 of Title 11 of the U.S. Code, 11 U.S.C. § 101, *et seq* (the "Bankruptcy Code").[1]

6. In connection with its voluntary chapter 7 petition, the Debtor filed its schedules of assets and liabilities (the "Schedules") and statement of financial affairs (the "SOFAs") on November 1, 2024. [Doc. 1.] The Debtor's Schedules and SOFAs were signed under penalty of perjury by Rick Carone, the president and CEO of the Debtor. [*Id.* at p. 7.]

7. The Debtor's Summary of Assets and Liabilities for Non-Individuals filed with the Schedules lists $0.00 in assets and $105,459,691.70 in liabilities [*id.* at p. 8], including an unsecured debt owed to the Commission for $$211,030.00 related to a settlement of prepetition litigation in the state of California. [*Id.* at p. 16, Part 2, Line 3.10.]

8. The Debtor's SOFAs state the Debtor has had no revenue since December 31, 2019 [*id.* at p. 28, Part 1, Line 1], made no payments to creditors in the 90 days prior to the Petition Date [*id.* at p. 28, Part 2, Line 1], made no payments to insiders in the 1 year prior to the Petition Date [*id.* at pp. 28-29, Part 2, Line 4], and made no transfers of money

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

2

or other property to any non-debtors within the 2 years prior to the Petition Date. [*Id*. at p. 30, Part 6, Line 13.]

9. The § 341 meeting of creditors was held and concluded on November 26, 2024. The Commission attended the § 341 meeting of creditors.

10. On November 26, 2024, Randy L. Royal, chapter 7 trustee for the Debtor's bankruptcy estate (the "Trustee") filed a *Chapter 7 Trustee's Report of No Distribution* [Doc. 5] (the "First No Asset Report"). Convinced by the Commission that there may be estate assets the Trustee may administer for the benefit of creditors, the Trustee withdrew the First No Asset Report on December 5, 2024. [Doc. 6.]

11. On February 12, 2025, the Commission filed its *Motion for Rule 2004 Request for Production of Documents and Deposition of Third-Party Witness Alex Schurawel* [Doc. 8] (the "2004 Motion"). The Commission sought the production of documents from Mr. Schurawel which "may reveal the Debtor's liabilities and financial condition from 2015 to present and whether the Debtor has committed wrongdoing pertaining to the veracity of their financial representations." [*Id*. at p. 4.] The Commission also states in the 2004 Motion that it "would consider reasonable modifications to the scope of its request upon a sufficient showing of undue burden." [*Id*. at pp. 7-8.]

12. The Court granted the 2004 Motion on February 21, 2025 [Doc. 12] (the "2004 Order"). The Clerk of the U.S. Bankruptcy Court for the District of Wyoming issued a *Subpoena for Rule 2004 Examination* [Doc. 14] (the "2004 Subpoena") on February 26, 2025.

13. After entry of the 2004 Order between February and December 2025, significant litigation ensued between the Debtor and the Commission regarding the 2004 Motion, the 2004 Order, and the 2004 Subpoena, including, but not limited to, two appeals initiated by the Debtor. [Docs. 17-21, 24-26, 35-38, 40, 43, 44, 47, 49-51, 53-55, 57, 58.]

14. Due to the uncertainty of the litigation and appeals over the 2004 Motion, the 2004 Order, and the 2004 Subpoena, Mr. Schurawel has not yet responded to the 2004 Subpoena or sat for examination by the Commission. In December 2025, the Commission courteously granted Mr. Schurawel additional time to respond to the 2004 Subpoena due to personal health issues and again due to the necessity for the undersigned to travel out of state to care for his father following surgery.

15. On December 29, 2025, in connection with its appeal to the Tenth Circuit Court of Appeals, the Debtor filed in this case a *Motion for Stay Pending Appeal* [Doc. 60], asking this Court to stay Mr. Schurawel's response to the 2004 Subpoena pending that appeal. The Commission filed an objection to the Debtor's motion on January 5, 2026 [Doc. 64.] The Court held a hearing on the Debtor's motion and the Commission's objection on January 7, 2026. Due to the ongoing uncertainty and possibility of the Court

3

granting the Debtor's requested relief, Mr. Schurawel did not respond to the 2004 Subpoena or agree to dates for production and examination proposed by the Commission while the Court took the Debtor's motion under consideration.

16. On February 2, 2026, the Trustee filed a second *Chapter 7 Trustee's Report of No Distribution* (the "Second No Asset Report"), certifying to the Court that there are no assets or property to be administered for the benefit of creditors of the estate and that the Debtor's bankruptcy estate had been fully administered.

17. On February 6, 2026, the Commission filed an objection to the Second No Asset Report [Doc. 70]. In its objection, the Commission argues its Bankruptcy Rule 2004 examination of Mr. Schurawel should be permitted to continue despite the Trustee's Second No Asset Report because the Commission believes the examination will uncover assets of the estate. [*Id*. at pp. 4-5, ¶ 16.]

18. On February 13, 2026, the Court entered its *Order Denying Stay Pending Appeal* [Doc. 71.]

19. On February 23, 2026, the Debtor filed a response to the Commission's objection [Doc. 74], arguing the Court should not overrule the Trustee's business judgment with respect to administration of the estate or the Trustee's determination there are no estate assets or claims to be administered in this case.

20. As of the date of this filing, the Court has not ruled on the disputes raised with respect to the Trustee's Second No Asset Report.

## RELIEF REQUESTED

**I. Mr. Schurawel Requests the Court Enter an Order Clarifying Whether Compliance With the 2004 Subpoena is Necessary in Light of The Trustee's Certification That the Debtor's Estate Has Been Fully Administered.**

21. Mr. Schurawel submits that an open, unresolved question currently exists before the Court as to whether the Commission's examination of Mr. Schurawel under Bankruptcy Rule 2004 should be permitted to go forward. Resolution of that question and clarity from the Court is critical because various federal and state laws impose civil and/or criminal liability for unauthorized disclosures of Mr. Schurawel's clients' confidential information.

22. The purpose of the Commission's Bankruptcy Rule 2004 examination of Mr. Schurawel is to determine if the Debtor's transactions reveal any fraudulent conveyances prior to it declaring bankruptcy, identify and locate assets of the estate, assess the accuracy of Debtor's petition, Schedules and SOFAs, and collect information to determine whether the Debtor has committed wrongdoing. This is consistent with primary purpose and scope of Bankruptcy Rule 2004(b). *See In re Kearney*, 590 B.R. 913, 920 (Bankr. D. N.M. 2018)

("[t]he primary purpose of a Rule 2004 examination is to determine 'the extent and location of the estate's assets.'").

23. However, in the Second No Asset Report, the Trustee certified to the Court that the Debtor's estate has been fully administered and that there are no assets or claims the Trustee can pursue or administer for the benefit of creditors in this case. The Commission objected to the Second No Asset Report, arguing the Court should keep this case open to allow the Commission to complete its Bankruptcy Rule 2004 examination of Mr. Schurawel. The Debtor contends the Court should not overrule the Trustee's business judgment in determining the Debtor's estate has been fully administered. Due to the pending contested matter over the Trustee's Second No Asset Report, Mr. Schurawel seeks clarification from the Court as to whether the estate has been fully administered under the meaning of § 350(a) and Fed. R. Bankr. P. 5009 and asks for clear direction from the Court as to Mr. Schurawel's obligations with respect to the Commission's Bankruptcy Rule 2004 examination.

24. Entry of a detailed order clarifying Mr. Schurawel's obligations with respect to the 2004 Subpoena is essential because several federal and state statutes and regulations impose civil and criminal penalties on tax return preparers for unauthorized disclosure of confidential information. For example, 26 U.S.C. § 7216(a) makes the unauthorized disclosure of tax return information a misdemeanor subject to fines or imprisonment. 26 U.S.C. § 7216(a) ("Any person . . . who knowingly or recklessly . . . discloses any information furnished to him for, or in connection with, the preparation of any such return . . . shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $1,000 ($100,000 in the case of a disclosure or use to which section 6713(b) applies), or imprisoned not more than 1 year, or both, together with the costs of prosecution."). Paragraph (b) of that statute provides an exception if such disclosure is made pursuant to an order of a court. 26 U.S.C. § 7216(b)(1)(B). Similarly, 26 U.S.C. § 6713 imposes civil penalties for unauthorized disclosures but also contains an exception for disclosures made pursuant to court order. 26 U.S.C. § 6713(a), (c). California, where Mr. Schurawel resides and has his tax practice, bars tax return preparers from disclosing confidential client tax information without the written permission of the client, except where disclosures are made in compliance with a subpoena or a summons enforceable by court order. CA Bus & Prof Code § 22252.1(a)(1); *see also* 061-6 Wyo. Code R. §§ 6-4 (Wyoming professional regulations bar tax return preparer from disclosing confidential information without client consent except in compliance with court order).

25. The Debtor, non-debtor entities, and non-debtor individuals, whose confidential tax information would be subject to production under the 2004 Subpoena, have not provided Mr. Schurawel their written consent to disclosure of their confidential information. Considering the potential for civil and criminal liability for unauthorized disclosure of their confidential information, it is critical that the Court enter a detailed order

clarifying the scope and extent of Mr. Schurawel's obligations with respect to the 2004 Subpoena.

## II. In the Event the Court Permits the Commission's Examination to Proceed, Mr. Schurawel Objects to the Scope of the Commission's Document Requests.

26. In the event the Court permits the Commission's examination to proceed, Mr. Schurawel objects to the scope of the Requests for Production of Documents (the "Document Requests") attached to the 2004 Subpoena. The temporal scope of the Document Requests and the definition of "Signal Hill" are overly broad requiring Mr. Schurawel to produce documents and be examined on matters beyond the scope of Bankruptcy Rule 2004(b) which are irrelevant to administration of the Debtor's estate and impose an undue burden on Mr. Schurawel.

27. Bankruptcy Rule 2004(b)(1) sets forth the limited scope of such examinations: "[t]he examination of an entity under this Rule 2004, or of a debtor under §343, may relate only to: (A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b)(1). "Proper purposes for a Rule 2004 examination include 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Martino*, 2011 Bankr. LEXIS 4560, at \*5 (Bankr. D. Colo. Nov. 17, 2011) (quoting *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)); *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000).

28. Although the scope of Bankruptcy Rule 2004 examinations is broad and has been referred to as a "fishing expedition," it is not without limits. Bankruptcy Rule 2004 examinations "cannot stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). For example, "[a]n examination about matters unrelated to the debtor's affairs or having effect on the administration of his estate is improper." *In re Kearney*, 590 B.R. at 921. Additionally, "Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).

29. Bankruptcy Rule 2004 gives the Court discretion to limit examinations as justice requires, including restricting discovery that appears unduly intrusive or burdensome. *In re Kearney*, 590 B.R. at 921-26. In this case, the Document Requests go far beyond the primary purposes of a Bankruptcy Rule 2004 examination and should be narrowly tailored by the Court to limit their scope to what is relevant to the proper inquiry into administration of the Debtor's estate and limit the burden imposed on Mr. Schurawel.

30. Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Fed. R. Bankr. P. 9016, states that a court "*must* quash or modify a subpoena" that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv)

6

Case 24-20439   Doc 77   Filed 03/04/26   Entered 03/04/26 12:29:53   Desc Main
                        Document      Page 7 of 15

(emphasis added).  Federal Rule 45(d)(1) also states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

31.     Determining "whether a subpoena imposes an undue burden . . . is a case-specific inquiry requiring consideration of 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 2008 U.S. Dist. LEXIS 43572, at *6 (D. Kan. June 3, 2006) (quoting *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 53217, at *19 (D. Kan. July 20, 2007)). "It is well-settled that the scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b)." *Lowther v. Marten Transp., Ltd.*, 2025 U.S. Dist. LEXIS 65726, at *2 (W.D. Okla. Apr. 7, 2025) (internal quotation omitted); *Hernandez v. Kolkman*, 347 F.R.D. 551, 555 (D. Utah 2024) ("subpoenas must fall within the scope of discovery under Rule 26, meaning the information sought must be 'relevant to any party's claim or defense and proportional to the needs of the case.'") (quoting Fed. R. Civ. P. 26(b)). Courts have held that a subpoena may be quashed if it calls for production of clearly irrelevant information. *United States v. Morris (In re Zimmer)*, 619 B.R. 591, 594 (Bankr. W.D. PA. 2002) (citing cases); *see also Copeland v. C.A.A.I.R., Inc.*, 2020 U.S. Dist. LEXIS 34399, at *15 (N.D. Okla. Feb. 28, 2020) (overly broad requests seeking large amounts of irrelevant information are unduly burdensome on their face).

32.     Further, § 105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Section 704(a) requires the Trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest" and "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(1), (4).  Section 521 also imposes a duty on the Debtor to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title" and "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(a)(3), (4). The Court may use its inherent authority under § 105(a) modify the Document Requests to tailor production to what is relevant, necessary and appropriate for the Trustee and the Debtor to carry out their respective duties and obligations under the Bankruptcy Code and to eliminate what is duplicative of production under § 521(a)(4).

*a. The Time Period Defined in the Document Requests is Overly Broad and Imposes an Undue Burden on Mr. Schurawel to Produce Documents Irrelevant to and Outside the Proper Scope of Inquiry Under Bankruptcy Rule 2004.*

33. First, the Document Requests seek documents and information covering the period from January 1, 2015 through November 1, 2024 – 9 years and 10 months prior to the Petition Date. This temporal range is overly broad and will force Mr. Schurawel to unnecessarily produce documents irrelevant to the basic inquiry and purpose of a Bankruptcy Rule 2004 examination. This time range is unduly burdensome on its face.

34. Section 541(a) specifies that property of the estate is measured "as of the commencement of the case." 11 U.S.C. § 541(a). There is simply no relevance to documents from 9 years and 10 months ago to the status of property as of the Petition Date in this case. The Debtor's bank records and tax returns from 5-10 years ago will not reveal anything about the Debtor's assets "as of the commencement of the case."

35. If the Commission's examination is intended to determine whether chapter 5 claims exist based on the Debtor transferring assets, such an inquiry is time limited. Under § 548(a)(1), the Trustee may only avoid transfers made or incurred on or within 2 years before the Petition Date. *See* 11 U.S.C. § 548. While the Bankruptcy Code's strong-arm provision of § 544(b) permits the Trustee to resort to a state law look back period for avoidance of fraudulent transfers, under Wyoming law that period is likewise 2 years. *See* Wyo. Stat. Ann. § 34-14-210(a); *see also* Cal. Civ. Code § 3439.09 (4 years under California law). Therefore, even if Mr. Schurawel produces records identifying potentially fraudulent transfers by the Debtor, the Trustee cannot avoid transfers occurring prior to November 1, 2022, making such records irrelevant to potential chapter 5 claims and the basic inquiry under Bankruptcy Rule 2004.

36. Mr. Schurawel submits that any obligation to produce documents beyond the scope of Bankruptcy Rule 2004 and irrelevant to administration of the Debtor's estate, discovering assets, examining transactions, and determining whether wrongdoing has occurred imposes a facially undue and unnecessary burden on him. Any documents beyond serve no relevant bankruptcy purpose and would only benefit the Commission's pursuit of payment of its claim outside of this bankruptcy case and confer an advantage on the Commission over other creditors in this case.

*b. The Definition of "Signal Hill" in the Document Requests and the Categories of Requested Documents are Overly Broad and Impose an Undue Burden on Mr. Schurawel to Produce Documents Irrelevant to and Outside the Scope of Inquiry Under Bankruptcy Rule 2004.*

37. Second, the Commission's definition of "Signal Hill" in the Document Requests is overly broad and requires Mr. Schurawel produce documents and be examined regarding entities and individuals having no relationship to the Debtor's assets or finances

8

or administration of the estate and places an undue burden on Mr. Schurawel to obtain access to such information.

38. The Document Requests define "Signal Hill" to mean:

> "SIGNAL HILL" refers to Signal Hill Service, Inc. and its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and/or each of its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time during the relevant time period specified herein.

[Doc. 14, p. 2, ¶ D.] The definition not only includes the Debtor and non-debtors entities and individuals appearing on the consolidated returns and any other entity tangentially related to the Debtor over the last 9 years and 10 months, but also each and every one of those entities' employees, agents, officers, directors, representatives, consultants, accountants, and attorneys over the last 9 years and 10 months.

39. This definition not only expands the number of persons or entities almost infinitely, but, read literally, it commands Mr. Schurawel to produce his own personal tax returns as well. The undersigned requested the Commission narrow the scope of the definition of "Signal Hill" to avoid this result, but the Commission refused. Just this definition puts the 2004 Subpoena and the Document Requests outside the proper limits of a Bankruptcy Rule 2004 examination. It strains credulity to say records belonging to "employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity" of each of the "Signal Hill" entities over the last 9 years and 10 months falls within the proper scope of Bankruptcy Rule 2004(b). The Document Requests were drafted without any regard for the actual relevance of the information the Commission seeks or the undue burden they impose on Mr. Schurawel.

40. There is also little to no relevance to that inquiry from records relating to the Debtor's "subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party." None of these categories of documents belonging to non-debtors are relevant or necessary for the Trustee to determine whether there are *estate* assets, including fraudulent transfer claims, which the Trustee can administer in this case. *See In re Underwood*, 457 B.R. 635, 645 (Bankr. S.D. Ohio) ("a 2004 exam is simply not an appropriate tool for obtaining a broad range of information from a non-debtor that is not relevant to the debtor or her estate."). There is nothing the non-debtors' records could inform the Trustee about prepetition transfers by the Debtor that the Debtor's records would not – if the Debtor made a transfer of property to a non-debtor prior to the Petition Date, the non-debtor's records are not necessary to reveal the existence of that transfer. Mr. Schurawel should not be unduly burdened with searching for and producing records wholly unrelated to primary inquiry in this case.

41. The categories of documents in the Document Requests are also overly broad, do not consider what documents Mr. Schurawel actually has in his possession, and are irrelevant in determining whether there are assets of the estate or if the estate has been fully administered. For each of the entities and individuals falling under the definition of "Signal Hill," the Debtor and non-debtors alike, Mr. Schurawel is commanded to produce:

- balance sheets;
- statements of assets and liabilities;
- bank statements;
- credit card statements;
- profit and loss statements;
- sources of income since 2015;
- statements of debits and credits;
- accounts which have been closed or inactive since 2015;
- tax filings;
- communications with Mr. Schurawel;
- communications between Mr. Schurawel and those persons' and entities' banking, lending and insurance institutions;
- loans given to each person and entity;
- debts held by each person and entity;
- payments by each person or entity to their agents, consultants, contractors;
- records related to each persons' or entities' creditors;
- records related to each person's or entities' accountants since 2015;
- each entities' officers since 2015;
- each entities' corporate records and minutes;
- any real property owned by each person or entity;
- insurance policies held by each person or entity; and

- any surety bonds held by any entity.

[Doc. 14, pp. 6-8.]

42. Mr. Schurawel simply prepares consolidated tax returns for the Debtor and various non-debtor entities. He is not their bookkeeper or accountant. His role is limited to taking documents given to him by his clients and preparing tax returns. Thus, all he has to produce is the tax returns themselves and whatever documents he receives for that purpose. Yet, if Mr. Schurawel does not have the requested documents for any entities or individuals under the definition of "Signal Hill," the Document Requests instruct him to undertake additional efforts to locate them:

> If your response is that the documents are not within your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document. If your response is that documents are not under your control, identify who has control and the location of the documents.

[Doc. 14, p. 8, ¶ 5.] For example, compliance with the Document Requests requires Mr. Schurawel to identify an hourly employee of a non-debtor from 8 years ago and, if Mr. Schurawel is not in possession of that employee's credit card statements, loan and debt history, and sources of income since 2015, he must make additional efforts determine who is in possession of those documents covering the last 9 years and 10 months and provide that information to the Commission. It is impossible to imagine how that information, let alone the corresponding burden imposed on Mr. Schurawel, is related or relevant to determining whether there are estate assets which can be administered for the benefit of creditors in this case.

43. The Commission may argue Mr. Schurawel reads the definition of "Signal Hill" too literally. The Commission may agree that it does not actually need all the documents requested and it will not hold Mr. Schurawel in contempt for not producing everything requested, including his personal tax returns, but that it intentionally drafted the Document Requests in an overly broad manner out of an abundance of caution. Nonetheless, the Commission has refused to narrow the scope of its Document Requests. Without narrowing the scope of production and Mr. Schurawel knowing ahead of time which specific entities' and individuals' confidential information must be disclosed, what information is actually necessary, and what missing information will trigger additional discovery or contempt proceedings by the Commission, Mr. Schurawel has no other choice but to read the Document Requests literally to fully comply to avoid placing himself at risk of contempt for noncompliance or civil and criminal liability. Again, the intentionally overbroad Document Requests were drafted without any consideration for their relevance or the burden imposed on Mr. Schurawel to comply.

44. Additionally, it is unduly burdensome for Mr. Schurawel to be required to produce what the Debtor has already provided to the Trustee or what the Debtor is already

obligated to provide the Trustee under the Bankruptcy Code. In addition to the Debtor's Schedules and SOFAs, Section 521 imposes on the Debtor an automatic statutory obligation to produce tax returns and financial records to the Trustee, without the need for a subpoena. *See, generally*, 11 U.S.C. § 521. Specifically, § 521(a)(4) imposes an affirmative obligation on the Debtor, without the necessity of a Bankruptcy Rule 2004 examination, to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate[.]" 11 U.S.C. § 521(a)(4). Thus, if there are tax returns, bank statements, credit card statements, or other categories of documents the Commission seeks which relate to or reveal the existence of property of the estate, the Debtor is already under an ongoing affirmative obligation to provide those documents to the Trustee. If the Debtor has not already done so in this case, the Debtor may be ordered to do so to allow the Trustee to determine if there are assets in this case and whether the estate has been fully administered. Document Requests requiring Mr. Schurawel to produce documents and information duplicative of what the Debtor has provided the Trustee or is already obligated to surrender under § 521(a)(4) are unduly burdensome on their face.

45. At a minimum, when the Trustee filed the First No Asset Report and the Second No Asset Report the Trustee had these § 521 documents in his possession, along with the Debtor's Schedules and SOFAs and information gathered at the § 341 meeting of creditors. If the Trustee believed the information he possessed did not tell the whole story, the Trustee is entitled – if not obligated – to continue his inquiry and request additional documents from the Debtor. Section 521(a)(3) obligates the Debtor to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3). Although parties in interest, including the Commission, may conduct Bankruptcy Rule 2004 examinations, any examination and production by Mr. Schurawel should not extend beyond what is "necessary to enable the trustee to perform the trustee's duties" under the Bankruptcy Code.

46. Instead, any production by Mr. Schurawel should be limited only to what the Trustee requires to complete his investigation into the Debtor's assets. After Mr. Schurawel produces documents to the Commission, the Commission is simply going to turn around and deliver those documents to the Trustee; if the Trustee is only going to consider a subset of what the Commission receives, Mr. Schurawel should only be burdened with producing that subset of relevant documents. Anything beyond that is irrelevant and does not serve any bankruptcy purpose or a proper investigation under Bankruptcy Rule 2004 but instead would only benefit the Commission's own collection efforts outside bankruptcy to the disadvantage of other creditors in this case.

47. Lastly, and perhaps more importantly, the 2004 Subpoena and the Document Requests raise significant privilege and due process issues for those non-debtors who are not Mr. Schurawel's clients and whose confidential information is subject to disclosure under the 2004 Subpoena. For example, the Debtor's consolidated tax returns may include

confidential information concerning non-client individuals unassociated with the Debtor or the non-debtor entities. While a Court order clarifying Mr. Schurawel's obligations under the 2004 Subpoena may permit disclosure under certain state and federal statutes and regulations with respect to the Debtor or the non-debtors who are part of the Debtor's consolidated tax returns, only a limited number of other entities and individuals under the overly broad definition of "Signal Hill" – if any – may have notice of the 2004 Motion, the 2004 Order, and the 2004 Subpoena or even know this bankruptcy case exists. Countless entities and individuals have had and will have no opportunity to raise any objections or give their consent or nonconsent to disclosure of their confidential information. Not only does it place an undue burden on Mr. Schurawel to identify these entities and individuals and solicit their consent prior to production, it would be a violation of those persons' due process rights if they were not permitted to be heard prior to disclosure.

### STATEMENT REGARDING PROPOSED ORDER

48. Mr. Schurawel has not submitted a proposed order with this motion because his clients – and other individuals and entities whose confidential information is subject to disclosure – have not given Mr. Schurawel their consent to produce their information sought by the Commission. Therefore, without a detailed Court order in advance Mr. Schurawel cannot even propose to agree to produce any documents due to potential civil and criminal liability under applicable non-bankruptcy law. That is why clear and specific direction and a detailed order from this Court clarifying Mr. Schurawel's obligations under the 2004 Subpoena is necessary. Following the Court ruling on the dispute over the Second No Asset Report and the relief requested herein, a proposed order consistent with the Court's rulings can be submitted.

### CONCLUSION

49. Ultimately, it is up to the Trustee to determine whether there are assets or fraudulent conveyance claims which may be administered or pursued for the benefit of creditors or whether, in the Trustee's business judgment, the estate has been fully administered. Whether Mr. Schurawel should be commanded to suffer the burden of production in this case should be viewed through that lens with an eye trained on the permissible scope and purposes of Bankruptcy Rule 2004 and what is actually relevant and necessary for the Trustee to make that determination. Mr. Schurawel believes the Document Requests exceed what is relevant to determining whether assets exist in this case, go beyond the scope of what is permitted by Bankruptcy Rule 2004, and, as currently written, create a facially undue burden on Mr. Schurawel outweighing any possible benefit to the estate and creditors.

50. Accordingly, Mr. Schurawel requests the Court, if it permits the Commission's Bankruptcy Rule 2004 examination to proceed, consider the undue burden that compliance with the 2004 Subpoena will impose on Mr. Schurawel and narrowly tailor the scope of Mr. Schurawel's obligations to what information is actually relevant and

necessary for the Trustee to determine whether any estate assets exist which can be administered in this case.

      WHEREFORE, Mr. Schurawel respectfully requests the Court: (i) enter an order clarifying whether the estate has been fully administered and whether the Commission's examination of Mr. Schurawel under Bankruptcy Rule 2004 to discover possible assets of the bankruptcy estate should continue where the chapter 7 trustee certified to the Court that there are no assets or property to be administered for the benefit of creditors; (ii) if the Court allows the examination to proceed, modify the scope of Mr. Schurawel's response to the 2004 Subpoena and Document Requests; and (iii) enter such further and other relief as the Court finds appropriate under the circumstances.

Dated: March 4, 2026

Respectfully submitted,

MARKUS WILLIAMS LLC

By: */s/ William G. Cross*

William G. Cross (Wyo. Bar No. 8-6562)
Jennifer Salisbury (Wyo. Bar No. 7-5218)
1775 Sherman St., Suite 1950
Denver, CO 80203
Telephone: (303) 830-0800
wcross@markuswilliams.com
jsalisbury@markuswilliams.com
*Counsel for Alexander Schurawel CPA*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing **MOTION FOR CLARIFICATION REGARDING COMPLIANCE WITH SUPOENA AND OBJECTIONS TO DOCUMENT REQUESTS** was filed on March 4, 2026, via the Court's CM/ECF system and served as indicated below on the following:

Via CM/ECF:

- Jeffrey M Boldt    jeffrey@kukerlaw.com, vaughna@kukerlaw.com
- John A. Coppede    jcoppede@coalcreeklaw.com, jfiscus@coalcreeklaw.com
- Steven Kerns    steven.kerns@doj.ca.gov, josephine.martinez@doj.ca.gov
- Isabella Panicucci    Isabella.Panicucci@doj.ca.gov
- Randy L. Royal    rlroyal@randylroyalpc.com, charlene@randylroyalpc.com; msanderton@randylroyalpc.com; WY14@ecfcbis.com
- Leena M. Sheet    leena.sheet@doj.ca.gov
- US Trustee    USTPRegion19.cy.ecf@usdoj.gov
- Stephen R. Winship    steve@winshipandwinship.com, billie@winshipandwinship.com; receptionist@winshipandwinship.com

Via. U.S. Mail

Jessica Tucker-Mohl
California DOJ
1300 I Street
P.O. Box 944255
Sacramento, CA 94244-2550

                                                    */s/ William G. Cross*
                                                    William G. Cross