Jeffrey M. Boldt, #7-4730
OVERSTREET HOMAR & KUKER
2922 Central Avenue
Cheyenne, Wyoming 82001
307.274-4444 telephone
307.274-4443 facsimile
jeffrey@kukerlaw.com

Jessica Tucker-Mohl, *pro hac vice*
Isabella Panicucci, *pro hac vice*
Steven Kerns, *pro hac vice*
California Attorney General's Office
1300 I Street, Suite 125
Sacramento, CA 95814
Telephone: (916) 210-7662
Isabella.Panicucci@doj.ca.gov

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SIGNAL HILL SERVICE, INC., | ) | Case No. 24-20439 |
| | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

## CREDITOR CALIFORNIA STATE LANDS COMMISSION'S OBJECTION TO MOTION TO APPROVE SETTLEMENT AGREEMENT

**COMES NOW** Creditor, California State Lands Commission ("Commission"), by and through its counsel, and objects to the Motion to Approve Settlement Agreement (ECF No. 104) (the "Motion") filed by Randy L. Royal, Chapter 7 trustee (the "Trustee") and urges the Court to deny the Motion as follows:

### INTRODUCTION

The reasonableness of the $50,000 settlement agreement that is the subject of this Motion (the "Settlement Agreement") has been dramatically undermined by debtor Signal Hill Service, Inc. ("Signal Hill") filing a motion in California state court reflecting its intent to pay the

Commission $381,352.36.[1] *See* ECF No. 113-1 at 2. That Signal Hill, or a third party seeking to confer a benefit on Signal Hill (thereby expanding its indebtedness), can somehow afford to pay its California counsel to file a motion to force a *single* creditor to accept *over seven times* more than what it is offering in settlement shows that the assertions in the Trustee's motion are belied by the facts and should be rejected. While this provides the Court enough reason to deny the Trustee's motion, several other equally valid reasons support the Court in doing so.

Indeed, granting the Trustee's motion would be unfair to the body of creditors because all evidence shows that the Settlement Agreement is unfair, inequitable, and in direct conflict the best interest of any creditor. The Settlement Agreement would permit two individuals, Richard Carone and Russ Howard, who are identified as principals of Signal Hill's affiliates[2] (the "Affiliates"), to pay $50,000 to the estate in exchange for a broad release of any potential claims the estate might bring against the Affiliates.[3] This would include any claim for fraudulent transfer that might be asserted against the Affiliates. Signal Hill owes its creditors $105,459,691.70. ECF No. 1 at 24. Two Affiliates—Pacific Operators Offshore, LLC and Republic Drilling Company—are listed as unsecured creditors of Signal Hill and would receive approximately *65% of any distribution made* from the estate because they hold the largest claims (of the total $105,459,691.70 in total claims, Pacific Operators and Republic Drilling are owed

---

[1] Signal Hill's counsel mailed a check to the Commission's counsel for $382,352.36. Signal Hill's counsel stated that the additional $1,000 was included to "account for any delay in your receipt of the check." ECF No. 113-1 at 26.

[2] Signal Hill states that its Affiliates include: Carone Energy Corporation, Carone Petroleum Corporation. Republic Drilling Company, Inc., Pacific Operators Offshore, LLC, Verrazzano Corporation, Carpinteria Offshore Project Ltd, Pacific Operators, Inc., dba Pacific Operators Offshore, Inc., AnAmerican Corporation (fdba AnAmerican Drilling, Inc.).

[3] Presumably Mr. Carone and Mr. Howard are the individuals who provided the $382,352.36 that was remitted in the form of a check, that has not been deposited, to the California Department of Justice out of Signal Hill's California counsel's client trust account. But, despite the Commission asking, Signal Hill's counsel has yet to explain who deposited the $382,352.36 into that account. ECF No. 113-1, Declaration of James R. Felton, ¶ 8, Ex. F (check from "Client Trust Account #3").

2

$68,815,540.21). ECF No. 1 at 20, 22. Thus, the non-Affiliate creditors would receive a pro rata share, based on their proofs of claim, of what remains in the estate, after deducting the Affiliates' pro rata share and any portion of the settlement that may be awarded to the Trustee as reasonable compensation under 11 U.S.C. 326(a). In other words, the vast majority of the proposed settlement will be returned directly to Signal Hill's Affiliates.

Moreover, Richard Carone and Russ Howard are referred to in the Settlement Agreement as "principals" of Signal Hill's Affiliates, but the Motion and Settlement Agreement omit the fact that those *individuals are also the principals of Signal Hill*. *See* ECF No. 1 at 4 (Voluntary Petition listing Richard Carone as CEO and President of Signal Hill) and 34 (Statement of Financial Affairs listing Russ Howard as CFO). So, any assets that they have as principals of the Affiliates should be the same assets that they have as Signal Hill's principals.

This has been an atypical bankruptcy marked by a litany of failed appeals meant to delay the creditors from conducting routine discovery and repeated violations of this Court's orders regarding that discovery, including the refusal by Signal Hill's accountant, Alex Schurawel, to appear at a 2004 examination. *See* ECF Nos. 110, 113. These highly questionable tactics, and ample case law, give this Court cause to review the Settlement Agreement with immense scrutiny, especially when the Settlement Agreement relies on easily disproven representations by the debtor. In contrast, there are no objective facts or evidence supporting any of the conclusory arguments in the Motion as to why the Court should approve the Settlement Agreement. For these reasons, the Commission's objections are well-founded, and the Court should deny the Motion.

## RELEVANT BACKGROUND

Signal Hill filed a Chapter 7 bankruptcy petition on November 1, 2024. The Trustee held a

3

meeting of creditors on November 26, 2024. ECF No. 2. That same day, the Trustee entered a report of no distribution, claiming there were no assets of the estate to distribute and seeking to be discharged from his duties as Trustee. ECF No. 5. Shortly thereafter, the Trustee withdrew the report of no distribution on December 5, 2024. ECF No. 6.

On February 12, 2025, the Commission filed a motion to conduct a Rule 2004 examination of Alex Schurawel, Signal Hill's accountant, and subpoena documents in his possession. ECF No. 8. The Court granted the Commission's motion on February 21, 2025. ECF No. 12. Mr. Schurawel was served with the subpoena on March 20, 2025. ECF No. 16. On April 14, 2025, fifty-two days after the Court granted the Commission's request for a Rule 2004 examination and subpoena, Signal Hill filed a motion for reconsideration of the Court's order granting the Rule 2004 examination and subpoena. ECF No. 17. The Court heard Signal Hill's motion for reconsideration on July 30, 2025. ECF Nos. 33, 34. During the hearing, the Court held that the Commission's Rule 2004 examination of Mr. Schurawel could continue subject to a protective order, and the Court entered a protective order on September 26, 2025. ECF No. 43.

On October 9, 2025, Signal Hill sought leave from the United States District Court for the District of Wyoming ("District Court") to appeal three orders from this Court: (1) *Order Granting Creditor's Motion for Rule 2004 Request for Production of Documents and Deposition of Third-Party Witness Alex Schurawel* ("Rule 2004 Order") [ECF No. 12]; (2) *Amended Protective Order – Confidential Designation Only* ("Amended Protective Order") [ECF No. 43]; and (3) *Order on Motion to Clarify Order* ("Clarification Order") [ECF No. 44]. The District Court denied Signal Hill's motion for leave to appeal on November 14, 2025, on the grounds that the appeal of the Rule 2004 Order was untimely and that the Amended Protective Order and Clarification Order were not appealable because they are not final and not subject to the

4

collateral order doctrine. ECF No. 53.

On December 15, 2025, Signal Hill filed a Notice of Appeal seeking review from the Tenth Circuit of the District Court's denial of Signal Hill's Motion for Leave to Appeal. *See* USDC Docket, ECF Nos. 8; 11. The appeal remains pending in the Tenth Circuit (Case No. 25-8081).

On February 2, 2026, the Trustee filed a second Report of No Distribution pursuant to FRBP 5009, despite there having been no material change in the bankruptcy, including the outstanding Rule 2004 examination. The Report stated that the estate "has been fully administered" and requested that the trustee be discharged from any further duties. The Report has no docket number, but it can be viewed in the February 2, 2026, docket entry. On February 6, 2026, the Commission objected to the Report. ECF No. 70. Signal Hill filed an opposition to the Commission's objection on February 23, 2026. ECF No. 74. Another creditor, Gaynor Ranch LLC, objected to the Report on March 4, 2026. ECF No. 76. On March 19, 2026, the Court issued an order sustaining the creditors' objections and holding the case open. ECF No. 79.

On April 2, 2026, Signal Hill appealed the Court's order sustaining the creditors' objections to the Report to the Tenth Circuit Bankruptcy Appellate Panel ("BAP"). ECF No. 84. The BAP dismissed the appeal for lack of jurisdiction on May 12, 2026. ECF No. 106.

In addition to the multiple appeals that Signal Hill has filed since October 2025 to prevent the Rule 2004 examination, Signal Hill has also brought two separate motions for a stay of the Rule 2004 examination pending the outcome of the appeals. ECF Nos. 60, 96. This Court denied both motions. ECF No. 71, 98.

To further delay his Rule 2004 examination, Mr. Schurawel asked this Court to further extend his deadline to respond to the subpoena, despite the Commission having voluntarily

granted numerous extensions to Mr. Schurawel's subpoena compliance deadline. ECF No. 90.
The Court granted the motion in part, ordering Mr. Schurawel to produce documents by May 15,
2026 and to be examined no later than May 31, 2026. ECF No. 94.

On May 12, 2025, just days before Mr. Schurawel was scheduled to produce documents,
the Trustee filed the instant Motion asking this Court to approve the Settlement Agreement
between him and Signal Hill's/the Affiliates' principals, Richard Carone and Russ Howard. ECF
No. 104.

Mr. Schurawel then served a deficient production of documents on May 18, 2026, three
days after his deadline for compliance. After the Commission met and conferred with Mr.
Schurawel's counsel, Mr. Schurawel refused to cure his deficient production, and the
Commission filed a motion to hold Mr. Schurawel in contempt. ECF No. 110.

On May 28, 2026, on the eve of the long-awaited day that Mr. Schurawel was finally
supposed to sit for the Rule 2004 deposition, Mr. Schurawel refused to appear and instead filed a
motion to be excused from compliance with this Court's discovery order. ECF No. 113. Mr.
Schurawel's cited reason for refusing to appear for his examination is a motion that Signal Hill
filed in California state court, that argues that the Commission is forced to accept a tender—from
an unknown party and without this Court's approval or input—of payment for the full judgment,
allegedly stripping the Commission of its status as a creditor in this bankruptcy proceeding. *See*
ECF No. 113-1 (Signal Hill's motion to require judgment creditor to accept payment in full of
judgment, attached as Exhibit A to Mr. Schurawel's motion for protective order).

## LEGAL STANDARD

Federal Rules of Bankruptcy Procedure ("FRBP"), rule 9019 gives courts discretion to
approve or deny a compromise or settlement. Fed. R. Bankr. P. 9019(a). When evaluating the

6

propriety of settlement, the Court should "consider the probable success of the underlying litigation on the merits, the possible difficulty in collection of a judgment, the complexity and expense of the litigation, and the interests of creditors in deference to their reasonable views." *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997). The court's decision "must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989). The burden of persuasion is on the proponent of the settlement to show that there is enough information to determine that the settlement or compromise is in the best interest of the estate and should be approved by the bankruptcy court. *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005); *see In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979); *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990).

It is a reversible error for a court to approve a settlement without evidence or without making meaningful findings. *In re Kopexa Realty Venture Co.*, 213 B.R. at 1023-24. If a Court does so, it fails to meet the requirements of the applicable bankruptcy rules, and its judgment must be remanded for further proceedings. *Id*.

## ARGUMENT

The Commission objects to the Settlement Agreement on the following grounds:

**I.    INSUFFICIENT INVESTIGATION PREVENTS AN OBJECTIVE EVALUATION OF THE SETTLEMENT AGREEMENT**

"There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *In re S. Med. Arts Companies, Inc.*, 343 B.R. 250, 256 (B.A.P. 10th Cir. 2006) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Here, Signal Hill and Mr. Schurawel have tried

7

everything—*including violating this Court's orders*—to prevent the creditors from having the facts necessary to validate Signal Hill's claims or allow this Court to make an informed and independent judgment as to whether the Settlement Agreement is fair and equitable. The Commission has tried since February 2025 to take a single routine deposition of Signal Hill's accountant, Mr. Schurawel, and Signal Hill has filed frivolous motions and appeals to prevent that from happening. *See, e.g.*, ECF No. 96 (Signal Hill repeating, nearly verbatim, rejected arguments to seek another stay of the Rule 2004 examination). Seemingly acting in concert with Signal Hill, Mr. Schurawel refused to cooperate with the Rule 2004 examination, even after bringing two motions that led to two court orders requiring him to comply with the Rule 2004 subpoena. Faced with the seeming inevitability of the Rule 2004 examination, rather than disclose routine facts, Signal Hill's principals and the Trustee entered into a Settlement Agreement that would foreclose any potential claim the estate might have against Signal Hill's Affiliates, such that even if evidence of fraudulent transfer were to be discovered, the estate could not void those transfers and recover assets to pay its creditors.[4]

The Court currently lacks evidence or objective facts that it can use to objectively evaluate whether the Settlement Agreement is fair and equitable. The Rule 2004 examination is, despite the Court's order, still incomplete, and the Commission has thus far been thwarted from pursuing its independent investigation of the debtor's financial estate. The Trustee has presented no facts or evidence to support his "business judgment" that Signal Hill has no recoverable assets. It is

---

[4] On May 28, 2026, Signal Hill filed a motion in California state court—notwithstanding the automatic bankruptcy stay—asking the state court to require the Commission to accept full payment of the judgment without this Court's review or approval. *See* ECF No. 113-1 (Exhibit A to Alex Schurawel's motion for protective order). Without consent from any court or the Commission, Signal Hill's California counsel mailed a check, which has not been deposited, to satisfy the judgment to the Commission's counsel. The origin of the funds Signal Hill's counsel transmitted is unclear. Mr. Schurawel points to Signal Hill's motion and tender of payment as justification for violating the Court's Rule 2004 discovery order. Based on the arguments made in Mr. Schurawel's motion and statements by his, and Signal Hill's, counsel, it appears their position is that Signal Hill tendering payment of the judgment means that the Commission is no longer a creditor and cannot participate in the bankruptcy, including its investigation into Signal Hill's assets via the Rule 2004 examination. The Commission will be addressing these issues in opposition to Mr. Schurawel's motion for protective order.

unclear what, if any, investigation the Trustee has done into the assets of the estate. Under 11 U.S.C. § 704(a)(4), a Chapter 7 trustee has a statutory duty to "investigate the financial affairs of the debtor," which includes claims for fraudulent transfer. *See In re Allied Computer Repair, Inc.*, 202 B.R. 877, 882 (Bankr. W.D. Ky. 1996) (a Chapter 7 trustee "bears the duty of 'surveying[ing] the landscape and searching for property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate.'") Here, the Trustee claims that he is "not aware of any transfers that would give rise to a fraudulent transfer claim against any Affiliate" (ECF No. 104 at 4), but fraud schemes are, by design, not self-revealing, and intentionally concealed. So, the Trustee would be unaware of such transfers unless he conducted an investigation to reveal them. To date, the Trustee has not provided any information about what investigation has taken place.

A trustee seeking a bankruptcy court's approval of a proposed compromise must show that he or she made an "informed judgment after *diligent investigation*." *In re Endoscopy Center of Southern Nevada, LLC*, 451 B.R. 527, 536 (Bankr. D. Nev. 2011) (emphasis added). The Trustee has not met his burden of showing that his judgment has been informed by a "diligent investigation." Further, the Commission has been thwarted in its efforts to uncover facts through the Rule 2004 examination that could be relevant to the Settlement Agreement. It is impossible at this time, based on the information available, for the Court to determine that the Settlement Agreement is fair and equitable—and that is to say nothing of how Signal Hill's California counsel was able to remit a check to the California Department of Justice in the amount of $382,352.36, or why it decided to do so without this Court's review or approval.

## II.   THE SETTLEMENT CONSIDERATION IS INADEQUATE AND INEQUITABLE

Under the Settlement Agreement, the Affiliates' principals would pay $50,000 for a full release of all claims that the estate could potentially assert against the Affiliates. This is merely a fraction of the $105,459,691.70 that Signal Hill owes to its creditors. ECF No. 1 at 24. Further, the Court should know that two of Signal Hill's Affiliates, Pacific Operators Offshore, LLC and Republic Drilling Company, are creditors of Signal Hill, and hold the largest claims. Of the total

$105,459,691.70 that Signal Hill owes its creditors, Pacific Operators and Republic Drilling are entitled to $68,815,540.21. ECF No. 1 at 20, 22. This means approximately 65% of the $50,000 settlement sum that would be provided by the Affiliates would be distributed right back into the Affiliates' pockets. Additionally, $5,750 of the settlement could potentially be paid to the Trustee pursuant to 11 U.S.C. 326(a) as reasonable compensation. This favorable distribution should cause this Court to be skeptical of the Settlement Agreement because courts should look to see if a settlement was potentially the product of collusion. *In re Dalen*, 259 B.R. 586, 605, 611-12 n. 34 (Bankr. W.D. Mich. 2001).

In sum, the fact that the Settlement Agreement involves such a small percentage of the total sum creditors are owed, combined with the insufficient investigation into the financial affairs of the debtor and whether larger sums could be obtained by the Trustee pursuing fraudulent transfer claims and exercising his avoidance powers, hardly supports a conclusion that this Settlement Agreement is fair and equitable.

### III. THE SETTLEMENT PERMITS AN OVERBROAD RELEASE OF CLAIMS

The Settlement Agreement provides for an expansive release of claims against a broad range of Affiliates and individuals. Specifically, it states:

> In consideration of the mutual promises contained in this Settlement Agreement, the Trustee, on behalf of the Debtor's estate, fully and finally releases, acquits, and forever discharges Debtor and the Released Parties of and from any and all claims, demands, rights, obligations, actions, causes of action, and damages (including attorney fees and costs), whether based on contract, statutory, rights, or tort, whether known or unknown, whether held by assignment or otherwise, and whether asserted or not, which the Debtor, its creditors or any trustee or similar fiduciary (e.g. a receiver or assignee) under the laws of any jurisdiction (ever had or now have against the Released Parties.[5]

ECF No. 104 at 8. If approved, this clause would foreclose a wide range of avoidable transfers that could result in significant assets for the estate. The minimal consideration that the Affiliates are offering—no more than approximately $17,375 for all non-Affiliate creditors—for such a

---

[5] "Released Parties" includes the Affiliates and their respective shareholders, members, officers, employees, predecessors, subsidiaries, attorneys, accountants, transferees, representatives, agents, successors and assigns. ECF No. 104 at 8.

broad release of claims, combined with the fact that the release of claims would insulate Signal

Hill's representatives, further shows that the Settlement Agreement is unfair and should be

rejected by the Court.

IV.   **THE COURT SHOULD APPLY HEIGHTENED SCRUTINY BECAUSE THE SETTLEMENT INVOLVES DEBTOR SIGNAL HILL'S PRINCIPALS**

When a settlement involves insiders or principals of the debtor, "the court must scrutinize

these dealings more carefully." *In re HyLoft, Inc.*, 451 B.R. 104, 113 (Bankr. D. Nev. 2011). The

Settlement Agreement is between the Trustee and two principals of Signal Hill's Affiliates, *who*

*are also principals of Signal Hill*, Richard Carone and Russ Howard. ECF No. 1 at 4 (Voluntary

Petition listing Richard Carone as CEO and President of Signal Hill) and 34 (Statement of

Financial Affairs listing Russ Howard as CFO); ECF No. 110 at 50-56 (Articles of Merger of

Signal Hill Service, Inc. (a Wyoming Corporation) and Signal Hill Service, Inc. (a California

Corporation), signed by Richard Carone and Russ Howard). This close relationship between

Signal Hill and its Affiliates and the fact that Mr. Carone and Mr. Howard are principals of both,

is yet another reason that the Court should review the Settlement Agreement with particular

scrutiny.

The Settlement Agreement involves releasing claims against the Affiliates, including the

Affiliates' "respective shareholders, members, officers, employees, predecessors, subsidiaries,

attorneys, accountants, transferees, representatives, agents, successors and assigns (collectively

the "Released Parties")." ECF No. 104 at 8. Mr. Carone and Mr. Howard fall into the category of

Released Parties, but they also serve as representatives of the debtor. As such, the Settlement

Agreement insulates Signal Hill's officers, as well as its Affiliates, from claims against them by

the estate. As representatives of the debtor, Mr. Carone and Mr. Howard stand to benefit from

the release of claims the Settlement would provide, to the detriment of creditors who might be

entitled to assets if the estate were to pursue claims against the Affiliates.

11

Given the above objections and the debtor's close involvement in the settlement, the Settlement Agreement fails to meet the heightened scrutiny standard that is applicable under these circumstances.

## V.    THE FOUR FACTORS DO NOT SUPPORT APPROVAL OF SETTLEMENT

The Trustee argues that the four factors the Court should consider when assessing the Settlement Agreement weigh in favor of approving settlement. As proponent of the Settlement Agreement, the Trustee has the burden of establishing that the settlement should be approved. *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005). The Trustee's arguments are conclusory and are unsupported by any objective facts or evidence. The Trustee has thus failed to meet his burden.

First, the Trustee claims that the estate would not likely succeed in a fraudulent conveyance proceeding against the Affiliates because any such claims are likely time barred. ECF No. 104 at 4. The Trustee cites nothing to support this assumption. The Trustee claims that he is unaware of any transfers that would give rise to a fraudulent transfer claim, but such a conclusory assumption rings hollow when it is unsupported by any documentation or reference to a meaningful investigation, especially when Signal Hill has vigorously prevented the release of any facts that could inform that conclusion. 11 U.S.C. § 704(a)(4) (a trustee has a statutory duty to "investigate the financial affairs of the debtor."). As discussed above, fraud schemes are intentionally concealed, and the documents Signal Hill provided when it filed for bankruptcy are unlikely to contain obvious evidence of fraudulent transfers. By extension, a cursory review of the documents that Signal Hill debtor provided at the inception of this bankruptcy is unlikely to reveal whether fraudulent transfers took place or the likelihood of success if such claims were pursued, unless investigated and verified. If the Trustee's position is that no fraudulent transfers have taken place, or that if they did, they would be time barred, he must support those claims with objective, verifiable evidence or an explanation of the investigative steps that were taken. The Trustee has seemingly yet to conduct any such investigation, or if he has, has yet to explain what that investigation entailed.

12

The Trustee also points to difficulties in collection and "expense, inconvenience, and delay of litigation" to support the approval of the Settlement Agreement. ECF No. 104 at 4. The Trustee relies primarily on the fact that the estate has no funds to pursue fraudulent transfer claims against the Affiliates and that pursuing such claims would expose the Trustee to liability under FRBP 9011. Again, the Trustee cites no evidence to support the contention that fraudulent conveyance claims would require retention of California counsel or that such claims would be so meritless that bringing such litigation would risk sanctions under FRBP 9011. The Trustee's claims that the estate would have to retain California counsel and "has no funds to pursue those matters" are disproven by the fact that the estate *already has retained and apparently paid* California counsel who recently filed a motion on Signal Hill's behalf. *See* ECF No. 113-1. In short, Signal Hill has California counsel, that appears to have been recently paid enough to draft a motion, despite Signal Hill's claim of zero assets, and that has offered the Commission a sum that is *over seven times larger* than the proposed settlement that the Trustee advocates here. *Id*. This all merits further investigation at a minimum and the rejection of the Settlement Agreement. Moreover, the Trustee cites no authority, and the Commission is aware of none, that the Trustee is relieved from his duty to conduct *at least* a minimal investigation into the debtor's financial affairs because of resource constraints or bare assertion that the estate has no funds.

Finally, the Trustee argues that the interest of creditors would be served by the Settlement Agreement because the $50,000 sum is "substantially more than they would receive as matters currently stand," and that "creditors will receive payment more promptly" through settlement. ECF No. 104 at 5. Again, this argument is not backed up by any meaningful investigation or evidence and is belied by the record. *See In re HyLoft, Inc.*, 451 B.R. 104, 116 n. 28 (Bankr. D. Nev. 2011) (without independent and articulable analysis, a trustee's bare assertions have little value); *see also* ECF No. 113-1 (Signal Hill's California motion to have Commission accept $382,352.36 without this Court's review or approval). Furthermore, the fact that approximately 65% of the $50,000 sum (which is a small portion of what is owed to all creditors) would go straight back to the Affiliates, further belies the notion that this Settlement Agreement confers

13

any meaningful benefit on the creditors. In assessing settlements, courts should look to the interests of creditors in deference to their reasonable views. *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997). Here, the creditors have ample reason to object to this Settlement Agreement before the Trustee has fulfilled his obligation of conducting a reasonable investigation into Signal Hill's assets.

## CONCLUSION

**WHEREFORE,** the Commission respectfully requests that this Court sustain the Commission's objection, deny the Motion, and decline to approve the Settlement Agreement.

**DATED** this 5th day of June 2026.

> **THE CALIFORNIA STATE LANDS COMMISSION,**
> **Creditor**
>
> By:   /s/ Isabella A. Panicucci
> Isabella Panicucci, *pro hac vice*
> Steven Kerns, *pro hac vice*
> Jessica Tucker-Mohl, *pro hac vice*
> California Attorney General's Office
> 1300 I Street, Suite 125
> Sacramento, CA 95814
> Telephone: (916) 210-7662
> Steven.Kerns@doj.ca.gov
> Isabella.Panicucci@doj.ca.gov
>
> Jeffrey M. Boldt, #7-4730
> OVERSTREET HOMAR & KUKER
> 2922 Central Avenue
> Cheyenne, Wyoming 82001
> 307.274.4444 telephone
> 307.274.4443 facsimile
> jeffrey@kukerlaw.com

# CERTIFICATE OF SERVICE

Case Name:  **In re SIGNAL HILL SERVICE, INC.**      Case No.   **24-20439**

_____          _____

I hereby certify that on <u>June 5, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**CREDITOR CALIFORNIA STATE LANDS COMMISSION'S OBJECTION TO MOTION TO APPROVE SETTLEMENT AGREEMENT** I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Stephen R. Winship
Winship and Winship, PC
steve@winshipandwinship.com
*On behalf of Debtor Signal Hill Service, Inc.*

John A. Coppede
Coal Creek Law, LLP
jcoppede@coalcreeklaw.com
*Attorney for Appellee Gaynor Ranch LLC*

US Trustee
USTPRegion19.cy.ecf@usdoj.gov

Jennifer M. Salisbury
William Cross
jsalisbury@markuswilliams.com,
docket@markuswilliams.com
*On Behalf of other Professional Alex Schurawel*

Randy L. Royal

*On Behalf of Trustee Randy L. Royal*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>June 5, 2026</u>, at Sacramento, California.

_____          _____
Antinia Brown                              Signature
Declarant

LA2024305269
39891724